UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

In re:

LESSNO, LLC,

    Debtor.

------------------------------------------------------X

LESSNO, LLC,

    Appellant,

v.

TALLY M. WIENER, ESQ.

    Appelle.

------------------------------------------------------X

E.D.NY. Bankr. Case
No. 09-44979 (ESS)

Involuntary Chapter 7 Proceedings

E.D.N.Y. Case

13-CV-1518 (NGG)

# BRIEF OF APPELLANT LESSNO, LLC

# TABLE OF CONTENTS

| | |
|---|---:|
| Statement of the Basis of Appellate Jurisdiction | 1 |
| Statement of the Issues Present and the Standard of Appellate Review | 1 |
| Statement of the Case | 1 |
| Argument | 4 |
| Conclusion | 11 |

# TABLE OF AUTHORITIES

In re Oxford Homes, Inc., 204 B.R. 264, 267–68 (Bankr.D.Me.1997).   6

Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir.2006).   1

Clear Blue Water, LLC v. Oyster Bay Management Co., LLC,
476 B.R. 60, 65-66 (E.D.N.Y. 2012)   1

Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc.
(In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 142 (2d Cir.2005),
quoting New England Dairies, Inc. v. Dairy Mart Convenience Stores,
Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92
(2d Cir.2003) (internal quotation marks omitted)   7

In re American, 194 B.R. at 724 (citing, In re Johnson, 126 B.R. 808
(Bankr.M.D.Fla. 1991   5, 6, 10

In re American Preferred Prescription, Inc., 194 B.R. 721
(Bankr. E.D. N.Y. 1996)   5, 6

In re Brown, 147 B.R. 55 (Bankr.D.Mass 1992)   6

In re MarketXT Holdings Corp., 346 Fed.Appx. 744, 745 (2d Cir.2009)   1

In re Olsen, 334 B.R. 104, 106 (Bankr. Oct. 27, 2005)   6, 10

In re Oxford Homes, Inc., 204 B.R. 264, 267–68 (Bankr.D.Me.1997)   6

In re S & Y Enterprises, LLC, --- B.R. ---, 2012 WL 4510690
(Bankr. E.D.N.Y.  Sept. 28, 2012)   7, 10


2 Norton Bankruptcy Law and Practice 2d § 42.28, at 42–159 (2d ed. 1994)   6

3 Collier on Bankruptcy, ¶ 503.04[4], at 503–55 (15th ed. 1995)).   6

4 Collier on Bankruptcy ¶ 503.11[4] (King et al. eds., 15th rev. ed. 2001))   6, 7

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

The appeal here involves a final order of the United States Bankruptcy Court for the Eastern District of New York. Under 28 U.S.C. § 158(a), district courts are vested with appellate jurisdiction to "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree." Fed. R. Bankr.P. 8013. See also, Clear Blue Water, LLC v. Oyster Bay Management Co., LLC, 476 B.R. 60, 65-66 (E.D.N.Y. 2012).

## STATEMENT OF THE ISSUES PRESENTED AND THE STANDARD OF APPELLATE REVIEW

The standard of review in a bankruptcy appeal is plenary. In re MarketXT Holdings Corp., 346 Fed.Appx. 744, 745 (2d Cir.2009). The reviewing court "review[s] the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous, but reviewing its conclusions of law de novo." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir.2006). The issue presented in this case is whether the Bankruptcy Court erred, as a matter of law, in granting the Appellee's motion for compensation where: (i) the relief was not requested, nor supported, by the actual parties-in-interest that she represented; and (ii) where the parties that she represented affirmatively release all claims against the bankruptcy estate.

## STATEMENT OF THE CASE

On June 12, 2009, certain creditors (the "Petitioning Creditors") filed an Involuntary Petition under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") against Lessno, LLC (the "Debtor"). The Debtor contested the filing of the Involuntary Petition. The Bankruptcy Court scheduled a trial on the Involuntary Petition.

The Petitioning Creditors retained Appellee, Tally M. Weinder, Esq. (the "Appellee") to act as trial counsel. On November 7, 2011, the Bankruptcy Court entered an Order for Relief against the Debtor. Thereafter, on or about November 8, 2011, Robert L. Geltzer was appointed the Debtor's Chapter 7 trustee (the "Trustee").

In December of 2011, the Appellee filed a motion to withdraw from her representation (Docket No. 126). In moving for withdrawal, Appellee stated that the Petitioning Creditors "knowingly and freely assent to end my employment as their attorney of record." (Docket No. 126, page 5, par. 9). More importantly, Appellee explained that she was also seeking withdrawal because the Petitioning Creditors "have rendered their representation unreasonably difficult" due to their "inability to pay or commit to future payment arrangements." (Id. at page 3, par. 4).

After the entry of the Order for Relief, the Trustee and the Debtor negotiated an agreement which resulted in The Debtor's filing of a motion to dismiss this case on July 6, 2012 (the "Motion to Dismiss"). The Motion to Dismiss incorporates a global resolution that was reached between the Debtor's ultimate owner, an entity known as Neveq ("Neveq"), the Petitioning Creditors and related entities.

Neveq and related entities (on the one hand) and the Petitioning Creditors and other related entities (on the other hand) were involved in multiple litigations across the world. Ultimately, the parties resolved all of their disputes and entered into a Global Settlement Agreement. The Global Settlement Agreement calls for the Petitioning Creditors and Neveq to each waive their pre-petition claims against the Debtor and for the dismissal of the Debtor's

3

bankruptcy case. The Global Settlement Agreement also calls for all parties to bear their own costs in the The Debtor bankruptcy proceedings.

After entry of the Global Settlement Agreement, the Debtor negotiated with the Trustee in this case to pay, in full, the remaining claims against the estates (consisting of a small amount of trade creditor claims), the Debtor's attorneys' fees, U.S. Trustee fees, and the fees and expenses of the Trustee and his professionals. As explained in the Motion to Dismiss:

> [A]fter the Order for Relief was entered in this matter, the Debtor's ultimate owner, Neveq, and other related entities owned by or affiliated with Neveq, reached a global resolution (the "Global Resolution") with the Petitioning Creditors and other related entities owned by or affiliated with them. In reaching the Global Resolution, the Debtor, Neveq, the Petitioning Creditors and the Chapter 7 trustee have reached an agreement regarding the disposition of this case. In summary, the parties have agreed to request that The Bankruptcy Court dismiss this bankruptcy case. * * * In accordance with the Global Resolution, the Petitioning Creditors have agreed to withdraw all of their pre-petition claims against the Debtor, in the aggregate amount of approximately $245,000. ***

(Docket No. 132 at pages 4-5).

The Trustee supported the Motion to Dismiss. The Petitioning Creditors did not oppose the Motion to Dismiss. The other creditors of the Debtor did not oppose the Motion to Dismiss. The Office of the United States Trustee did not oppose the Motion to Dismiss.

The Appellee was the only person to oppose the Motion to Dismiss. In addition to opposing the Motion to Dismiss, the Appellee filed her own, pro se, request to be paid administrative claims and expenses for her representation of the Petitioning Creditors at trial (the "Claim Motion"). The Debtor opposed the Appellee's Claim Motion.

The Bankruptcy Court granted the Motion to Dismiss and the Claim Motion. In granting the Claim Motion, the Bankruptcy Court, the Bankruptcy Court did not address two critical

4

arguments (and applicable case law cited by the Debtor) that the Claim Motion should be denied. Specifically, the Bankruptcy Court did not address: (1) the fact that the Appellee alone – and not the Petitioning Creditors themselves --- requested payment of Appellee's fees and costs; and (2) that the Petitioning Creditors waived the right to be reimbursed their fees and costs as part of the Global Settlement Agreement.

## ARGUMENT

### I.

### THE BANKRUPTCY COURT ERRED IN GRANTING THE CLAIM MOTION

The Bankruptcy Court erred in granted the Claim Motion. The Petitioning Creditors did not file a motion for administrative fees to recoup the $3,000 paid to Appellee. The Petitioning Creditors did not support Appellee's unilateral request for fees. Instead, the Petitioning Creditors in fact abandoned and released <u>with prejudice</u> all claims in this estate, including all requests for attorneys' fees and costs. (Docket No. 132 at pages 4-5).

The Global Resolution confirms that Appellee is precluded from asking for compensation in this bankruptcy case. The Petitioning Creditors withrew with prejudice all claims asserted in the Bankruptcy Court and all motions seeking costs, fees or sanctions, and agreed to bear their own costs. Moreover, Neveq did not and does not agree to pay Appellee's fees in the Motion to Dismiss. Appellee's application was therefore both unexpected and contrary to the plain language of the Global Resolution.

The Claim Motion relied upon Section 503(b) of the United States Bankruptcy Code (11 U.S.C. §503(b)). However, there does not appear to be a reported decision in this Circuit that entitles an attorney to seek reimbursement of her fees own and costs under Section 503(b) independent of her clients' request or support and in the face of an express waiver of all claims

5

for legal fees against the estate. Instead, the case most directly on point in this District expressly rejects the premise that an attorney for a creditor or other party in interest can unilaterally request such relief.

In In re American Preferred Prescription, Inc., 194 B.R. 721 (Bankr. E.D. N.Y. 1996) ("In re American"), a law firm sought reimbursement from the estate for services rendered on behalf of a creditor pursuant to Section 503(b). At the time, the law firm's client --- the actual estate creditor --- "never applied to The Bankruptcy Court for reimbursement of its expenses . . . has been out of the case for over one year; and The Bankruptcy Court has never been asked to determine whether Hadiya's expense, as a former creditor, should be compensated for making a substantial contribution to this estate." In re American, 194 B.R. at 724. The Court concluded that under such circumstances, the law firm lacked standing on its own to seek payment under Section 503(b):

> In The Bankruptcy Court 's reading of section 503(b)(4) in order for Marcus to be reimbursed under that section, Marcus' client, the former creditor Hadiya, must be an entity whose expense is allowable under section 503(b)(3)(D). The Marcus Firm, as Hadiya's former counsel, cannot simply apply for legal fees and re-imbursement of legal-related expenses independent of a determination that Hadiya's own expenses are allowable. The creditor must either, first or together with the attorney, apply to the court for reimbursement of expenses allowable under section 503(b)(3)(D) for making a substantial contribution to the case. The creditor should at least support the counsel requesting the fees which were incurred on behalf of the creditor and which result in a benefit to the estate, aside from, and in addition to those services which benefit the creditor.

In re American, 194 B.R. at 724.

While finding no "case law directly on point", the Court nevertheless found ample support for its conclusions in other cases recognizing that "in general, attorneys must look to their own clients for payment of legal fees and expenses" and that a finding of "substantial contribution by a creditor is a pre-condition to an award of counsel fees under Section 503(b)."

6

The Court also found support in the two leading treatises of bankruptcy law. In re American, 194 B.R. at 724-726 (citing, In re Johnson, 126 B.R. 808 (Bankr.M.D.Fla.1991); In re Brown, 147 B.R. 55 (Bankr.D.Mass.1992); 2 Norton Bankruptcy Law and Practice 2d § 42.28, at 42–159 (2d ed. 1994); and 3 Collier on Bankruptcy, ¶ 503.04[4], at 503–55 (15th ed. 1995)).

The Southern District of New York has taken the same approach in In re Olsen, 334 B.R. 104 (Bankr. Oct. 27, 2005). In that case, a married woman filed an individual Chapter 11 proceeding and an apartment that she owned with her husband was sold at auction. The husband's law firm held the closing funds in escrow and represented his interests in connection with the sale. The husband's law firm sought compensation for the services rendered to him under Section 503. The Bankruptcy Court granted the request. In re Olsen, 334 B.R. at 104.

The District Court reversed. The District Court determined that, "the most natural reading" of Section 503, is that "the creditor, and not the creditor's attorney, may apply for the payment of fees from the estate." In re Olsen, 334 B.R. at 106.

The District Court did leave open the possibility that "under certain circumstances" "it may be appropriate to consider counsel's application to have been made 'on behalf of' his or her creditor client so that the court may proceed directly to its merits without multiplying proceedings by standing on formalities." Id., citing, In re Oxford Homes, Inc., 204 B.R. 264, 267–68 (Bankr.D.Me.1997). However, the District Court indicated that those "certain circumstances" required showings of either client consent and/or evidence "that the professional is not seeking an award of compensation to him or herself. It is seeking reimbursement on behalf of the client." Id., citing, In re American, (supra) at 723-726; 4 Collier on Bankruptcy ¶ 503.11[4] (King et al. eds., 15th rev. ed. 2001)). In the case at hand, the District Court held that

7

the law firm did not have the support of its client. Similarly, the law firm was seeking payment for itself rather than to reimburse the client. Id.

The District Court concluded recognizing that a bankruptcy court is not authorized "to create substantive rights that are otherwise unavailable under applicable law." Id. at 108, citing, Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 142 (2d Cir.2005), quoting New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir.2003) (internal quotation marks omitted). Revisiting Collier, the District Court agreed that that an attorney "has been retained by [her client] rather than by the estate" and "is entitled to look only to its' client for payment and not the estate" and that therefore "the right to request compensation, therefore belongs to the client and not to the professional." Id. at 107, citing 4 Collier at 503.11[4].

The Bankruptcy Court had the opportunity to consider many of these issues in In re S & Y Enterprises, LLC, --- B.R. ---, 2012 WL 4510690 (Bankr. E.D.N.Y. Sept. 28, 2012). In that case, an entity known as Bedford JV, LLC ("Bedford") was the unsuccessful bidder for the Debtors' properties. While not succeeding in acquiring the properties, Bedford sought an administrative expense allowance claiming that it made a substantial contribution to the case by: (i) bidding in a manner that raised the ultimate sales price; (ii) drafting and prosecuting certain plans and disclosure statements which were not confirmed; (iii) participating in the case; and (iv) paying various counsel fees and expenses incurred by the Debtors' principals. Id. at *1 The Bankruptcy Court ultimately denied the allowance of Bedford's request, but examined the issue

8

of Bedford's standing to bring such a request in a manner that warrants attention in the case at bar.

Ultimately, the Bankruptcy Court held that Bedford had standing to seek allowance of an administrative expense under Section 503(b).  In doing so, The Bankruptcy Court first recognized that such a remedy should be rarely and sparingly granted:

> Payment from the debtor's estate of a creditor's or other entity's counsel fees and expenses based on a substantial contribution in the bankruptcy case should be the exception, not the rule, because any allowed administrative expense diminishes the assets that are available for the debtor's plan of reorganization. . . . [B]oundaries are necessary to maintain the "integrity of § 503(b)," and where a creditor seeks to recover its counsel fees and expenses under Section 503(b), a court should "strictly limit compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate." In re Best Prods. Co., 173 B.R. 862, 866 (Bankr.S.D.N.Y.1994). In this context, courts have concluded that Section 503(b) administrative expenses "should be kept to a minimum" and "be narrowly construed." Am. Preferred Prescription, 194 B.R. at 726. See, e.g., In re Villa Luisa, L.L.C., 354 B.R. 345, 348 (Bankr.S.D.N.Y.2006) (holding that "[c]laims for substantial contribution are ... narrowly construed and are subject to strict scrutiny").

Id. at *4.

The Bankruptcy Court then reviewed various cases considering the scope of standing for persons to seek administrative claims. The Bankruptcy Court concluded that:

> Section 503(b)'s enumeration of categories of prospective applicants for a substantial contribution administrative expense is illustrative, not exclusive. Section 503(b)(3)(D) and the cases that interpret it recognize the prospect that a substantial contribution in a Chapter 11 case may come from many quarters, and that sometimes, an applicant's efforts in advancing a debtor's reorganization are of such a nature and extent that the reasonable costs of those efforts should be shifted from the applicant to the estate. Viewed another way, Section 503(b)(3)(D) opens the door to the possibility that where the estate as a whole directly benefits from an entity's participation in a Chapter 11 case, that entity's counsel fees and expenses may be paid as an administrative expense. But Section 503 does not open that door too wide, and the inquiry in each situation should be case-specific and fact-intensive.

Id. at *6.

In reaching that conclusion, the Bankruptcy Court reviewed cases involving various participants in a Chapter 11 case that sought administrative expense claims including: creditors; third-party plan funders; bidders; and investors. Id. at *5-6. The Bankruptcy Court did not address specifically whether an attorney for a participant --- acting alone and without the participant's support --- could unilaterally seek an allowance under Section 503.

The Bankruptcy Court also strictly confined the grounds upon which an applicant could assert a "substantial contribution". The Bankruptcy Court required proof of "services in the bankruptcy process that yielded a direct and significant benefit to the bankruptcy estate or the parties as a whole" arising from circumstances that are "case-specific, fact-intensive – and unusual." Id. at *10. Similarly, an entity not specifically identified as being able to request relief under Section 503 must make a "substantial showing" in order to shift its counsel fees and costs to the Debtors' estates. Id. at * 11.

In light of the various factors identified above, Appellee's request should have been denied. This is true for a litany of reasons:

The Petitioning Creditors withdrew all claims, including those for counsel fees and expenses, as part of the Global Resolution. As explained in the case law, and Collier's, Appellee can have no better right to recover fees and costs incurred on her clients' behalf under Section 503(b) than her clients have to such relief. Appellee's clients withdrew "all" claims with prejudice in this case, including, specifically, claims for attorneys' fees and costs. Accordingly, Appellee cannot preserve a right to fees when the clients themselves have relinquished their rights to such fees.

The Petitioning Creditors have not incurred the requested fees. The Petitioning Creditors have not made the request for fees. The Petitioning Creditors have not supported Appellee's

10

request for fees. The Petitioning Creditors have <u>waived</u> the right to any payments in this case. The Petitioning Creditors have played no role in this case for nearly a year. The Petitioning Creditors did not pay Appellee directly (other than a nominal amount) and raised no quarrel with her withdrawal as counsel. Appellee is not seeking the fees to reimburse her clients, but rather to pay herself. Appellee was not a participant in this case like the applicant in <u>In re S & Y</u> and lacks the joinder or support of her clients as mandated by <u>In re American</u> and <u>In re Olsen</u>. Accordingly, Appellee lacks standing to bring the request for fees.

The Application to support the allowance of an administrative claim contradicts the general and well settled rule that attorneys for non-debtors must look to their own client rather than the estate for payment. Appellee certainly has the right to pursue collection actions from her clients. However, she has not shown in her motion the unusual or extraordinary facts or circumstances that would give rise to the allowance of a claim here. There is no showing that Appellee went beyond the zealous representation of her clients' own interests to pursue or obtain a goal for the estate as a whole or the creditor body in its entirety. Indeed, the successful resolution of this case turns upon: (i) the entire withdrawal <u>with prejudice</u> of all claims by the Petitioning Creditors in this case as part of a Global Resolution of a myriad of litigations across the globe; (ii) voluntary payments by The Debtor's ultimate owner to fully satisfy all unsecured creditors and the allowed Chapter 7 trustee fees and expenses; and (iii) the support and endorsement of the Chapter 7 trustee. Appellee's motion is devoid of any evidence even hinting at her participation in any of the foregoing.

11

## CONCLUSION

For the foregoing reasons, and those previously presented, it is respectfully submitted that The Bankruptcy Court should be reversed.

Respectfully submitted,

Michael J. Connolly, Esq.
FORMAN HOLT ELIADES &
YOUNGMAN, LLC
80 Route 4 East, Suite 290
Paramus, NJ 07652

Dated: April 9, 2013
New York, NY