UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

| | |
|---|---|
| In Re: | E.D.N.Y. Bankr. Case |
| LESSNO, LLC, | No. 09-44979 (ESS) |
| Debtor. | Involuntary Chapter 7 Proceedings |

------------------------------X

| | |
|---|---|
| Lessno, LLC, | E.D.N.Y. Case |
| Appellant, | No. 13-CV-1518 (NGG) |
| v. | |
| Tally M. Wiener, Esq. | |
| Appellee. | |

------------------------------X

### APPELLEE TALLY M. WIENER, ESQ.'S
### MEMORANDUM OF LAW IN SUPPORT OF AFFIRMANCE
### OF THE ORDER ENTERED BY THE HONORABLE
### UNITED STATES BANKRUPTCY JUDGE ELIZABETH S. STONG
### AWARDING HER AN ADMINISTRATIVE EXPENSE CLAIM

Tally M. Wiener, Esq., holder of an allowed administrative expense claim in the Chapter 7 bankruptcy proceedings of Lessno, LLC (the "Debtor" or "Lessno"), submits this memorandum of law in support of affirmance of the order entered on the 14th day of December, 2012 by the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") ordering her payment by New Europe Venture Equity LP ("Neveq"),[1] and in opposition to the relief requested in the time-barred appeal filed by the Debtor improperly attempting to attack her claim based on a provision of title 11 of the United States Code (the

---

[1] Upon information and belief, Neveq is a Cayman registered partnership owned and controlled by Neveq Capital Partners Limited, a British Virgin Islands registered business company. The Neveq family of companies includes Neveq SLP Limited, a British Virgin Islands registered company, Neveq S.À R.L., a company registered in the Grand Duchy of Luxembourg, and newly launched NEVEQ II.

"Bankruptcy Code"), which by its express terms does not apply in Chapter 7, and respectfully states as follows:

### Preliminary Statement

The Bankruptcy Court ordered an allowed administrative expense claim in favor of the appellee herein, Tally M. Wiener, Esq. (the "Appellee"), on the same day on which it dismissed the involuntary Chapter 7 petition of the Debtor, a deeply insolvent company owned and controlled by Neveq.  Dismissal was based on the misrepresentation by the Debtor that full payment of all amounts owed to all affected parties would be made by Neveq.  Following Neveq's refusal to honor its promise of payment, Miss Wiener appealed, *inter alia*, the dismissal and that appeal is currently pending in this Court before the Honorable Jack B. Weinstein, E.D.N.Y. Case No. 13-CV-00831 (the "Already Pending Appeal").  Subsequently, the Debtor defied both this Court and the Bankruptcy Court by filing the instant untimely appeal of the order awarding Miss Wiener an allowed administrative expense claim without (1) paying the administrative expense; (2) posting a supersedeas bond; or (3) advising the Court of the Already Pending Appeal before Judge Weinstein.  For these reasons and those set forth below, this appeal should be dismissed or alternatively, consolidated, with the Already Pending Appeal, and all relief requested by the Debtor should be denied.

### Facts

I.      Proceedings Before the Bankruptcy Court

On June 12, 2009, petitioning creditors filed involuntary Chapter 7 bankruptcy proceedings against Lessno, seeking court supervision of the deeply insolvent company.  On

-1-

November 7, 2011, after trial, the Bankruptcy Court allowed the involuntary petition, overruled the Debtor's Answer, and directed that an order for relief be entered adjudging Lessno bankrupt.

On November 8, 2011, Robert L. Geltzer was appointed as interim Chapter 7 Trustee of the Debtor, and thereafter was made permanent Trustee (the "Trustee"). On July 6, 2012, the Debtor made a motion seeking entry of an order pursuant to Section 707 of the Bankruptcy Code approving and authorizing (a) the dismissal of the Debtor's Chapter 7 case (the "Case") and (b) procedures with respect to the dismissal and the making of distributions to the Debtor's creditors and the payment of the Chapter 7 administrative expenses in the Case (the "Motion to Dismiss"). In the Motion to Dismiss, Debtor's counsel advised that Neveq had reached a settlement with the petitioning creditors and the Trustee for disposition of the Case:

> In summary, the parties have agreed to request that this Court dismiss the bankruptcy case. The outstanding pre-petition claims will be fully paid, as well as professional fees and other expenses incurred since the filing of this bankruptcy petition. *As a result, there will be a full payment of all amounts owed to all affected parties.*

Motion to Dismiss, at 2 (emphasis added).

Based on the foregoing, on July 25, 2012, an Application for allowance of an administrative expense claim was filed by Tally M. Wiener, Esq., an attorney who had bankrupted the Debtor. The Debtor opposed the relief requested therein. In the briefing that followed, Michael J. Connolly, counsel for the Debtor, filed a "Letter Brief" dated October 5, 2012, in which he advised -- in stark contrast to the language emphasized above -- that:

> In the motion to dismiss, Lessno's ultimate owner, an entity known as Neveq, agreed to pay in full all of Lessno's remaining unsecured claims and the allowed fees of the Chapter 7 trustee and his counsel. The motion is supported by the Chapter 7 Trustee. However Neveq did not and does not agree (sic) to pay Ms. Wiener's fees.

-3-

> \*\*\*\*
>
> Given Neveq's refusal to fund if Ms. Wiener's motion is granted, there will be no benefit to the estate, but instead, an unmitigated disaster as this case will be rendered grossly administratively insolvent and the unsecured debtors will receive no distribution whatsoever.

Letter Brief, at 3. The quoted language from the Motion to Dismiss is obviously -- although not admittedly -- inconsistent with the Letter Brief.

After review of papers submitted by Miss Wiener in support thereof and papers submitted by the Debtor in opposition thereto, and after multiple hearings, the Bankruptcy Court entered, on December 14, 2012, an Order Allowing Administrative Expense (the "Administrative Expense Order") awarding Miss Wiener an allowed administrative expense in the Case in the amount of $46,451.00, with the priority and right to payment afforded to administrative expenses pursuant to Bankruptcy Code section 507(a)(2) in connection with her reasonable and necessary efforts required to pursue the involuntary Chapter 7 petition to its successful conclusion by entry of an order for relief.

Also on December 14, 2012, the Bankruptcy Court entered a separate order titled Order Dismissing Chapter 7 Case and Marking the Motion to Compel and the Motion to Strike Off the Calendar (the "Dismissal Order") in which it, *inter alia,* granted the Debtor's Motion to Dismiss to the extent of dismissing the Case for cause pursuant to Section 707(a) of the Bankruptcy Code based on the Debtor's representation in the Motion to Dismiss and on the record that there would be full payment of all amounts owed to all affected parties.

Since entry of the Dismissal Order, the Debtor and Neveq have made no attempt to pay Miss Wiener. The Debtor and Neveq behave as if the court-ordered obligations to honor their promises of payment - which were the basis for dismissal of the Case - have been stayed,

although Lessno has neither sought nor was it granted any stay by the Bankruptcy Court or this Court.

II.   Appellate Proceedings

### A. *Miss Wiener Timely Appeals the Dismissal Order*

Miss Wiener timely filed a Notice of Appeal of the Dismissal Order -- which had been entered by the Bankruptcy Court on December 14, 2012 -- on December 27, 2012, a day before the 14-day deadline imposed by Federal Rule of Bankruptcy Procedure 8002.  Rule 8002 provides, in pertinent part: "The notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from."  Miss Wiener's appeal was assigned to Judge Weinstein, and is referred to herein as the Already Pending Appeal.  Miss Wiener timely filed her memorandum of law in support of the Already Pending Appeal on April 4, 2013 and served it on the Debtor.  On April 18, 2013, the Debtor filed a memorandum of law in response.

### B. *The Debtor Untimely Appeals the Administrative Expense Order*

The Debtor did not timely file a Notice of Appeal of the Administrative Expense Order. To be timely, an appeal of the Administrative Expense Order should have been filed by December 28, 2012 as the Administrative Expense Order, like the Dismissal Order, was entered on December 14, 2012.  On January 29, 2013, one month after the deadline for appealing the Administrative Expense Order, the Debtor filed a Notice of Appeal of the Administrative Expense Order.  By this point, the 21-day period for filing a motion requesting an extension of the time to appeal had passed.  *See* Federal Rule of Bankruptcy Procedure 8002(c)(2) ("A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 21

days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect. An extension of time for filing a notice of appeal may not exceed 21 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or 14 days from the date of entry of the order granting the motion, whichever is later."). The Debtor's neglect is, in any event, inexcusable.

The Debtor filed its memorandum of law in support of the late-filed appeal of the Administrative Expense Order pending before Your Honor on April 10, 2013. The Debtor did not set forth in its papers when it filed its appeal because it knew it was not timely. Nor did the Debtor advise Your Honor of the existence of the Already Filed Appeal, which is, on the Debtor's view, a related appeal.

## Discussion

### I. This Appeal Should Be Dismissed As Untimely

As set forth above, the Debtor did not meet the relevant statutory requirements in connection with filing or pursuing the instant appeal. Accordingly, the appeal of the Dismissal Order should be dismissed.

### II. This Appeal Should Be Dismissed or, in the Alternative, Consolidated before Judge Weinstein Based on the Debtor's Deliberate Failure to Advise the Court of the Interplay Between This Appeal and the Appeal before Judge Weinstein

On April 18, 2013, the Debtor filed a memorandum of law in the Already Pending Appeal before Judge Weinstein. That appeal concerns only the Dismissal Order, and the various issues on appeal raised by Miss Wiener in her "Statement of Issues and Designation of Record on Appeal from *Order Dismissing Chapter 7 Case and Marking the Motion to Compel and the Motion to Strike Off the Calendar* Entered on the 14th Day of December, 2012." There is no

cross-appeal expanding the scope nor can there be at this late date. Yet, the Debtor seems to have copied and pasted into the briefing it submitted to Judge Weinstein on April 18, 2013 (in the Already Pending Appeal) multiple pages of the arguments concerning the Administrative Expense Order from the briefing submitted by the Debtor to Your Honor on April 10, 2013.

The Debtor's briefing hides, in contravention of Rule 1.6 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") that there are two appeals pending concerning rulings handed down on the same day in *In re Lessno, LLC*, which were assigned to two different judges in the Eastern District of New York.

Miss Wiener would prefer that the instant appeal be stricken because it is time-barred and, as discussed below, frivolous and spurious, thereby unnecessarily increasing already substantial collection costs, which she is required to pay until they are shifted to Neveq by court order. She recognizes there is a question as to whether the issues raised in the two appeals are technically "related" within the meaning of the Local Rules, and wishes to avoid incurring further costs and experiencing further delays in resolving this question. But as the Debtor clearly is trying to tie the issues addressed in Judge Stong's two separate rulings together, notwithstanding that they are the subject of separate orders and legal and factual considerations, Miss Wiener respectfully requests that, in the interests of justice and efficiency, the instant untimely appeal be transferred to Judge Weinstein for consolidation if it is allowed to proceed.

> III. This Court Should Not Consider the "Global Settlement Agreement" Upon which the Debtor Purports to Rely Because the Debtor Did Not Appropriately Enter that Document in the Record Before the Bankruptcy Court and Has Not Made that Document Part of the Record on Appeal

The Debtor has sought, in the memorandum that it has submitted to this Court in support of its appeal, to rely upon a document that it characterizes as a "Global Settlement Agreement."

This document was the subject of Miss Wiener's unopposed *Motion to Strike Debtor's Supplemental Filing on the Basis that it is in Violation of Section 107 of Title 11 of the United States Code, and Due to Debtor's Failure to Comply with (I) Rule 9018 of the Federal Rules of Bankruptcy Procedure, (II) Rule 9018-1 of the Local Bankruptcy Rules for the Eastern District of New York, and (III) the Bankruptcy Court's Order Dated August 16, 2012,* which should have been granted after the Debtor and its Neveq failed to obtain Bankruptcy Court approval to submit the "Global Settlement Agreement" for *in camera* inspection. The denial of this unopposed motion by the Bankruptcy Court has been appealed to Judge Weinstein because the denial was part of the Dismissal Order.

Miss Wiener respectfully requests entry of an Order striking those sections of the Debtor's memorandum that purport to rely on the "Global Settlement Agreement" for purposes of this appeal of the Administrative Expense Order for two reasons separate and apart. Firstly, the references to the "Global Settlement Agreement" should be stricken because the document is not included in the Debtor's filing with this Court. The Court cannot reasonably be asked to rely on self-serving characterizations of the content of this document without being able to review the document itself. Secondly, the references to the "Global Settlement Agreement" should be stricken because there is a related confidentiality agreement in place with a six-figure penalty for breach. Neveq cannot have its cake and eat it too by hiding a document it cannot disclose

without exposing itself further than it has already to a substantial penalty, yet rely on its characterizations of the document at the same time.

> IV. The "Global Settlement Agreement" Did Not and Cannot Affect Miss Wiener's Entitlement to an Administrative Expense Claim

Moreover, even if the Court were to accept the Debtor's characterization of the "Global Settlement Agreement" sight unseen, the document cannot affect Miss Wiener's entitlement to an administrative expense claim for at least the five reasons she previously articulated to the Bankruptcy Court in supplemental briefing she submitted on October 5, 2012 – none of which were addressed by the Debtor or Neveq below or in the earlier filing with this Court:

Firstly, the "Global Settlement Agreement" was not presented to the Bankruptcy Court for approval. Indeed the Debtor and Neveq have hidden the "Global Settlement Agreement" because it was entered into following entry of an Order for Relief, at a time when the Debtor could not transfer assets, and yet the "Global Settlement Agreement" purports to transfer and abandon valuable property of the Chapter 7 estate.

Secondly, certain conditions precedent of the "Global Settlement Agreement" have not been satisfied, including that the Case was not converted to a Chapter 11 case as contemplated by the "Global Settlement Agreement."

Thirdly, the Bankruptcy Court and this Court arguably lack jurisdiction over construction of the "Global Settlement Agreement" due to a United Kingdom choice of jurisdiction clause.

Fourthly, even if an American court may properly construe the parties' respective rights under the "Global Settlement Agreement," the Debtor and Neveq - having attempted to deprive the Bankruptcy Court of jurisdiction over the "Global Settlement Agreement" - should be estopped from invoking and relying on it on appeal.

Fifthly, by operation of law the "Global Settlement Agreement" cannot deprive Miss Wiener of a recovery. Section 475 of the New York Judiciary Law provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

As explained in connection with recent efforts to broaden the scope of this law so that it applies in the alternative dispute resolution space "section 475 was created in 1909 and then amended in 1936, 1938, and 1946. Each amendment expanded the scope of services for which attorneys were permitted to obtain a charging lien to secure payment for their work." Report by the Committee on Professional Responsibility of the Association of the Bar of the City of New York Recommending Amendments to Judiciary Law Sections 475 and 475-a, available online at http://www.nycbar.org/pdf/report/20071638.pdf.

All of which is to say, the "Global Settlement Agreement" did not and could not deprive Miss Wiener of a recovery for involuntarily bankrupting Lessno.

> V.   *Miss Wiener Does, in Fact, Have the Capacity to Pursue and Recover an Administrative Expense Claim in Her Own Right*

Miss Wiener's entitlement to an administrative expense claim is based on the clear and unambiguous language of the Bankruptcy Code and the underlying policy considerations. Bankruptcy Code sections 503(b)(3)(A) and 503(b)(4) provide standing. The Debtor's arguments to the contrary are based on Bankruptcy Code section 503(b)(3)(D), which concerns substantial contribution claims.

For close to a year now, Miss Wiener, who is a thought leader on involuntary insolvency proceedings in the U.S., UK, offshore jurisdictions, and elsewhere[2] has been explaining to Mr. Connolly – counsel of record for Lessno who acts for Neveq as well in connection with Lessno's involuntary Chapter 7 proceedings – that her right to payment is not based on the substantial contribution provisions of the Bankruptcy Code. Yet he cites substantial contribution cases that he knows do not apply. He filed multiple briefs opposing the relief requested by Miss Wiener to which Miss Wiener responded, has refused to engage in a Court ordered settlement meeting, and otherwise caused delays at the Bankruptcy Court level. He then initiated an untimely appeal and is prosecuting it before two United States District Court Judges with no good faith basis, wasting judicial resources and necessitating Miss Wiener's hire of a bankruptcy litigator and incurrence of related legal fees and costs. Miss Wiener respectfully requests that this Court craft a meaningful remedy that puts an end to the litigation, and compensate her in full.

Bankruptcy Code section 503(b)(3)(D) does not apply in Chapter 7 cases, and is not applicable by analogy or otherwise. Indeed Judge Stong, who ruled in Miss Wiener's favor, did so after rejecting a substantial contribution claim in another case decided a few weeks earlier, which the Debtor cited to her as it does to this Court, and was so clearly off point that she did not deem it worthy of so much as a mention. *See* Brief of Appellant Lessno, LLC, at 8-10.

Bankruptcy Code section 503(a) provides Miss Wiener the right to file a request for payment of an administrative expense. Bankruptcy Code section 503(b) provides for allowance of administrative expenses including actual, necessary expenses of a creditor that files an involuntary bankruptcy petition, and reasonable compensation for professional services rendered

---

[2] See for example recent publications for the American Bankruptcy Institute styled Tally M. Wiener & Adrian J. Walters, *The Promise and Perils of Involuntary Insolvency Proceedings*, American Bankruptcy Institute Journal (April 2012); Wayne P. Weitz & Tally M. Wiener, *Offshore Jurisdictions Embrace Universalism in Waste2Energy* (American Bankruptcy Institute Journal) (April 2013).

by attorneys and accountants who act for petitioning creditors with allowable expenses. Specifically section 503(b)(3)(A) provides for allowance as administrative expenses of "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph 4 of this subsection, incurred by – (3) a creditor that files a petition under section 303(a) of this title." 11 U.S.C. § 503(b)(3)(A). Section 503(b)(4) provides for allowance as administrative expenses of the "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D) or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).[3]

Sections 503(b)(3)(A) and 503(b)(4) derive from § 64b of the Bankruptcy Act of 1898. Section 64b identified priority claims and provided, in relevant part:

> The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be . . . (3) the cost of administration, including . . . [a] reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in the involuntary cases.

*In re Omar Sharif Amanat,* Chapter 7 Case No. 04-43361 (ALG) (Bankr. S.D.N.Y. April 12, 2006), at 5. Attorney fees are allowed "for work directly related to the preparation of the petition, and if there is opposition, to reasonable and necessary efforts to pursue a petition to a successful conclusion by entry of the order for relief." *Id.* (citing *In re Crazy Eddie, Inc.*, 120 B.R. 273, 278 (Bankr. S.D.N.Y. 1982)).

---

[3] Section 503(b)(3)(A) and 503(b)(4) do "not require the petitioning creditor to have been allowed expenses. The statute's criterion is that the creditor's expenses be 'allowable,' not 'allowed.'" *In re Wind N' Wave,* Bankruptcy Appellate Panel Case No. CC-04-1462-BKMa (B.A.P. 9th Cir. May 2, 2005), at 12.

-11-

At the August 16, 2012 hearing, the Bankruptcy Court directed the parties' attention to *In re Olsen*, 334 B.R. 104, 107 (S.D.N.Y. 2005) as potential support for the Debtor's position and *In re Mirant*, 354 B.R. 113 (Bankr. N.D. Tex. 2006), as potential support for Miss Wiener's position. Both opinions concern allowance of substantial contribution awards in Chapter 11 cases under section 503(b)(3)(D), a Bankruptcy Code section that by its terms applies only in cases under Chapters 9 and 11 of the Bankruptcy Code. Miss Wiener's Application was brought under section 503(b)(3)(A), and in an involuntary Chapter 7 case.

To the extent the Debtor continues to rely upon *In re Olsen* or other cases for the proposition that the creditor itself, and not the attorney, must make the application for attorneys' fees, this Court should reject this reliance, not only because that case considered a separate Bankruptcy Code provision but also because of the compelling logic of the *Mirant* court:

> In the *Olsen* case, the Court held that "the statute contemplates that the fees covered by subsection (b)(4), like those covered by subsection (b)(3) will have been 'incurred by' a creditor." . . . . This court declines to follow *Olsen*. As Judge Leslie Tchaikowsky stated in *In re Western Asbestos Co.*, 318 B.R. 527, 530 (Bankr. N. D. Cal. 2004), section 503(b)(4) contains no requirement that fees be paid by the client before they may be recovered from the estate. The language of Section 503(b)(4) is distinctly different from that used in subsection 503(b)(3) which specifically refer to the "creditor" . . . as the one that must seek reimbursement. Nor is it absurd to read section 503(b)(4) to allow direct application by an attorney or accountant. . . . The court thus holds that, by its plain language, Code § 503(b)(4) allows attorneys and accountants to apply directly for payment by the estate if they represent a party specified in section 503(b)(3).

*In re Mirant*, 354 B.R. at 140-41. Additionally, in the *Olsen* case, the court was punishing attorneys who made their application in their client's name only to have the client object to the claim at the hearing. *See In re Olsen*, 334 B.R. at 105, 108 ("In closing, the Court recognizes that this case presents an unusual set of facts."). Here, the petitioning creditors were served with Miss Wiener's Application, and had an opportunity to be heard, and lodged no objection to the relief she requested. Moreover, Miss Wiener's work was very helpful to the Debtor's estate.

During the compensation period (the last day of which was November 7, 2011, the date that the Order for Relief was entered), Miss Wiener worked on matters detailed in Exhibit A to the Application, including a successful trial, following which Lessno was adjudged bankrupt and

12

the parties entered into the serious settlement discussions that put them on the path to a resolution of their differences on a global basis. The effects of the services rendered by Miss Wiener during the compensation period were: (1) the bankrupting on an involuntary basis of a deeply insolvent company that was unable to pay its debts, and posed a moral hazard to counter-parties; (2) resolution of litigation before the Bankruptcy Court that had been getting progressively more contentious prior to Miss Wiener's engagement and had been delaying adjudication of the involuntary Chapter 7 petition; and (3) the creation of a bankruptcy estate that, as indicated in the Dismissal Motion, is greatly enriched by the petitioning creditors' alleged waiver of six-figure claims, and will yield a recovery for third parties, including the Debtor's counsel.

For all of the foregoing reasons, the instant appeal untimely appeal by Lessno should either be stricken or consolidated with the Already Pending Appeal and the relief Lessno seeks should be denied as set forth herein.

Dated:  April 24, 2013        Respectfully submitted,
        New York, NY

                              Seán P. McGrath
                              Seán P. McGrath, Esq.
                              Law Offices of Seán P. McGrath, Esq.
                              305 Lexington Avenue, PH A
                              New York, NY 10016
                              (917) 679-6273
                              spmcgrath4@hotmail.com